**UNITED STATES of America for the use and benefit of Morris C. SOPER, Plaintiff,**

**v.**

**CALVADA, Inc., a corporation, and Fidelity and Deposit Company of Maryland, a corporation, Defendants.**

**Civ. No. 3857.**

United States District Court
N. D. New York.
April 30, 1952.

Giles, Fuller & Goodwin, Watertown, N. Y., for plaintiff, Harry Kalman, New York City, of counsel.

Dugan, Barkhuff & Dugan, Albany, N. Y., for defendant F. & D. Co., William L. Wallace, New York City, of counsel.

Maurice Edelbaum, Brooklyn, N. Y., for defendant Calvada.

FOLEY, District Judge.

This action was tried by the court commencing on April 18, 1951 and concluding on April 24, 1951. The action is brought under the Miller Act, 40 U.S.C.A. §§ 270a to 270d. The record discloses that twenty-five days were allowed to the attorneys after the transcription of the minutes for the filing and exchanging of briefs. Thereafter, there was no voluntary communication by any of the attorneys with the court concerning the status of the matter. On March 21, 1952, Mr. Fuller, one of the attorneys for the plaintiff, in answer to my letter of January 9, 1952, advised the court that the matter would be submitted to the court without further delay. On February 29, 1952, the brief for the plaintiff was submitted, and on April 11, 1952, Calvada, Inc., by its attorney filed its brief. The attorneys

for the defendant, Fidelity & Deposit Company of Maryland, informed the court by letter dated March 27, 1952 that after reviewing the memorandum submitted by the plaintiff it was decided not to file any memorandum in behalf of defendant Fidelity & Deposit Company of Maryland. It is not my custom to recite such facts in any decision, but the unexplained apathy to submission of the matter here, in my judgment, necessitates comment because to me it is most unusual.

However, despite the burden of reading 784 pages of stale record, my labor is not too difficult in coming to my determination. The attorneys have stipulated that the preliminary issue concerning the authenticity and validity of the writings in issue, and the authority involved in their execution, shall be decided by the court with a continuation then for the proof of damages depending upon the disposition by the court in that respect (Tr. 82, 83, 84). It is my considered judgment upon reading the record, which refreshed my impression at the conclusion of the trial, that the plaintiff must prevail in the stipulated preliminary phase and issue of the action. The sole premise for this conclusion is that the truth of the situation concerning the June 8, 1950, and the July 28, 1950 writings is completely in my judgment on the side of the plaintiff. The most credulous person would have extreme difficulty in accepting the testimony on the material issues in this respect offered by the defendant on the trial.

There is no question in my mind that Phillips, the general superintendent for Calvada, Inc., signed the June 8, 1950 letter, accepting such terms for his employer corporation, and also knowingly signed the July 28, 1950 modification or abrogation agreement. It is also overwhelmingly clear to me from the record that Calvada, Inc. bestowed upon said Phillips the actual and apparent authority to execute such documents and that such corporation, through its Vice President Reiss, had actual knowledge of such writings, observed the work thereunder,

and ratified the execution by Phillips. There is no credible evidence to show that there was any disavowal by the corporation, either oral or written, of the apparent authority of Phillips in his important duties as general superintendent on the site of construction. A motive on the part of Phillips is completely lacking in the proof as to why he would not naturally discuss the execution of these important writings in his continuous talks with Reiss during the work, or why he would conceal such writings from his employer when there could be no possible personal benefit to him and when the day of reckoning was bound to come.

■ The position of the defendant Calvada concerning the provisions by reference as to written order in the subcontract and in the main contract as to notice by affidavit to the contractor has little merit. Assuming such provisions were legally binding, it seems to me that they were waived by the acts of the defendant Calvada. The statute must be liberally construed to effectuate its purpose (United States for Use of Baltimore Cooperage Co. v. McCay, D.C., 28 F.2d 777; Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 380, 37 S.Ct. 614, 61 L.Ed. 1206; John A. Johnson & Sons v. United States, 4 Cir., 153 F.2d 534; Power Service Corporation v. Joslin, 9 Cir., 175 F.2d 698).

On the phase of the action herein tried and submitted my findings are:

■ That Morris Phillips, the general superintendent for defendant Calvada, Inc., did knowingly execute and sign the writings dated June 8, 1950, and July 28, 1950; that, under the circumstances prevailing, Morris Phillips at the time of such signing had actual and apparent authority as general superintendent and was the sole representative of defendant Calvada at the site of construction; that defendant Calvada never disavowed, orally or by writing, the actual and apparent authority of Phillips and in fact ratified such authority.

It is my conclusion that the writings of June 8, 1950, and July 28, 1950 constitute valid, binding, and duly authorized agreements.

The plaintiff may recover from the defendants according to the terms of the agreements and the proof of damages to be submitted shall follow such terms in that respect. In accordance with the stipulation of the attorneys, the time and place for the hearing on proof of damage may be set by the service of five days notice to that effect by the attorneys for the plaintiff upon the attorneys for the defendants.